UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERESHA M. PITTS,

                Plaintiff,

v.                                                **DECISION AND ORDER**
                                                               **17-CV-923**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

## INTRODUCTION

Plaintiff Sheresha Pitts brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her application for disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). Dkt. Nos. 13, 16. For the reasons that follow, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On April 24, 2014, the plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability since November 30, 2012 due to a breathing problem, a neurological problem, hypertension, a weight problem,

1

and an emotional problem. Tr.[1] 131-137. On June 6, 2014, the plaintiff's claim was denied by the SSA at the initial level. Tr. 57-63, 66-70. On May 5, 2016, the plaintiff appeared with her attorney and testified along with a vocational expert ("VE") before Administrative Law Judge, Michael Lehr ("the ALJ"). Tr. 35-56. On May 20, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 7-27. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on July 12, 2017. Tr. 1-3. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

Plaintiff previously filed an application for a period of disability and disability benefits which was denied by the SSA on November 29, 2012, and her date last insured for DIB was December 31, 2012. *See Pitts v. Colvin*, No. 14-CV-00317-WMS, 2015 WL 3823781, at *1 (W.D.N.Y. June 19, 2015) (unpublished). Therefore, the time period at issue for this matter is November 29, 2012 through December 21, 2012.

**LEGAL STANDARD**

I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] References to "Tr." are to the administrative record in this matter.

substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that the plaintiff last met the insured status requirements of the SSA on December 31, 2012, and the plaintiff had not engaged in substantial gainful activity from November 30, 2012, through December 31,

4

2012. Tr. 12. At step two, the ALJ found that the plaintiff has the following severe impairments: pulmonary hypertension, history of pulmonary emboli, pseudotumor cerebri, obesity, and mild asthma. *Id.* Here, the ALJ also found the plaintiff's depression was a non-severe impairment. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 14.

Next, the ALJ determined that the plaintiff retained the RFC to perform sedentary work[2] with limitations. Tr. 14. Specifically, "she is limited to only occasional balancing, stooping, kneeling, crouching, or crawling; cannot perform work requiring the use of ladders, ropes, or scaffolds, or have concentrated exposure to temperature extremes, vibration, work hazards, or pulmonary irritants; cannot perform any overhead reaching; and she requires the ability to change positions from sitting to standing (or vice versa) for up to five minutes every sixty minutes while remaining at the workstation." Tr. 14-15.

At step four, the ALJ relied on the VE's testimony and found the plaintiff was unable to perform her past relevant work as a "medical assistant" and "bank teller." Tr. 21. At step five, the ALJ relied on the VE's testimony and found that other work exists in significant numbers in the national economy for an individual with the plaintiff's

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

RFC, age, high school education, and work experience. Tr. 22-23. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from November 30, 2012 through December 31, 2016. Tr. 23.

II.     **Analysis**

Plaintiff argues that remand is required because the ALJ violated the treating physician rule by discrediting the opinion of Sonal Patel, M.D. ("Dr. Patel") concerning the plaintiff's need to keep her legs elevated; failing to evaluate physician assistant Michael Brynildsen's ("PA Brynildsen") letter, which supported Dr. Patel's opinion; and improperly relied on his own lay opinion to determine Plaintiff's RFC.[3] Dkt. No. 13, 11. The Commissioner contends that the ALJ's decision is supported by substantial evidence. Dkt. No. 16, 9. This Court finds that remand is necessary for the reasons discussed herein.

### A. Treating Physician Rule

An ALJ is required to "evaluate every medical opinion [he] receives." 20 C.F.R. § 416.927(c). Under the treating physician rule, a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). When an ALJ declines to afford controlling weight to a treating physician's medical opinion as to the nature and severity

---

[3] The plaintiff included an additional argument concerning the ALJ's failure to account for her headaches in the RFC, which the Court does not address in this decision where it finds remand is warranted on another basis.

6

of the impairment, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Id.* An ALJ does not have to explicitly address each of the factors in his decision, so long as the Court can "conclude that the ALJ applied the substance of the treating physician rule … and provide 'good reasons' for the weight [he or] she gives to the treating source's opinion." *Id.* However, neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion, in social security disability proceedings. *Burgess v. Astrue*, 537F.3d 117, 131 (2d Cir. 2008) (internal quotations and citations omitted). The Second Circuit has held that remand is warranted when an ALJ fails to seek additional information from the treating physician that would further develop an incomplete record. *See Shaw v. Chater*, 221 F.3d at 134 (2d Cir. 2000) (holding that, "[f]or the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel") (internal citations omitted).

### 1. The ALJ improperly rejected Dr. Patel's opinion.

It is undisputed that Dr. Patel is the plaintiff's "treating physician." Dr. Patel authored two letters on the plaintiff's behalf, the first on October 29, 2012 (prior to the alleged onset date) and the second on December 3, 2012. Tr. 665,666. In the letters, Dr. Patel opined that the plaintiff needed to keep her legs elevated to prevent further swelling and future blood clots. *Id.* In the decision assessing the plaintiff's RFC, the ALJ considered Dr. Patel's opinion concerning the plaintiff's need to elevate her legs. Tr. 21.

> "In a December 3, 2012 letter, claimant's treating physician, Dr. Sonal Patel, reports a history of multiple medical problems dating back to 2008, when she developed multiple clots to her lungs (Exhibit 20). Dr. Patel indicates claimant has been on Coumadin since that time, and has been keeping both legs elevated to prevent swelling—stating that this restriction has been ongoing since May of 2008[,] and that it was ongoing since the date of the letter "due to the fact that, if she does not do so, her clots can become recurrent, as well as her chest pain, which she has been having on and [off] since 2008 up to now." *Id.*

> ". . .[T]he undersigned has considered the October 29, 2012 letter from claimant's treating physician, Dr. Patel, that states claimant "will need to keep both her legs elevated to prevent further swelling" (Exhibit B21F)."

Tr. 16. The ALJ explained that he accorded "little weight" to Dr. Patel's opinion that the plaintiff needed to keep her legs elevated because the opinion was not supported by objective clinical and diagnostic findings. Tr. 21. The ALJ specified,

> "there are no clinic notes in the file from this examiner to support this assessment and related medical evidence in the file, as previously pointed out, shows claimant's history of [recurrent] pulmonary embolism has been "stable" since 2012 since starting Coumadin (Exhibit B3F, page 16). Again, though well after the date last insured for disability benefits, subsequent medical reports in February 2016 show this condition remains stable with medication and that claimant has not had any pulmonary embolisms since 2012 (Exhibit B18F, page 25)." *Id.*

The ALJ determined the plaintiff retained the RFC to perform work at sedentary level

8

with additional limitations based on the "longitudinal record" and noted that there was "no medical evidence in the file that warrants any additional restrictions." *Id.*

In support of his decision, the ALJ evaluated the plaintiff's medical record throughout the relevant period and determined the record evidence, including Dr. Patel's treatment records, did not support the doctor's opinion because the plaintiff's medical record evidence was silent regarding any instructions for the plaintiff to keep her legs elevated. The ALJ also repeatedly emphasized that the plaintiff's recurrent pulmonary embolism, which he found was a "severe impairment," had stabilized, according to the medical records. Ultimately, the ALJ reasoned that the plaintiff's need keep her legs elevated to prevent swelling and blood clots was not documented in any of the plaintiff's medical treatment records, including those from Dr. Patel, and the plaintiff's medical records indicated the plaintiff's recurrent pulmonary embolism had "stabilized." Therefore, the ALJ determined there was no need for the plaintiff to keep her legs elevated, as recommended by Dr. Patel, her treating physician.

Although a leg elevation restriction is not specifically memorialized in the plaintiff's medical treatment records, the plaintiff's history of pulmonary embolisms since 2008 along with continuous anticoagulant treatment is documented by multiple medical providers throughout the relevant period. For example, the ALJ referenced Dr. Patel's treatment notes from an examination of the plaintiff on November 27, 2012, (three days before her alleged onset date) where the Dr. opined the plaintiff's pulmonary embolism was "stable" and was being treated with anticoagulants. Tr. 17 (referring to Exhibit B3F, 16). Dr. Patel noted the plaintiff would continue her anticoagulant therapy

9

for her pulmonary embolism, with an "INR goal" of 2 – 3 and warfarin adjustments per clinic protocol. Tr. 240-241. Notably, the record does not contain a functional assessment from any other doctor, and as the plaintiff identified, Dr. Patel's leg elevation restriction is not contradicted by any medical evidence. Dkt. No. 13, 14.

The Second Circuit has held that a lack of specific clinical findings in the treating physician's report does not, standing by itself, justify the ALJ's failure to credit the physician's opinion, where it is the ALJ's duty to seek additional information from the treating physician. *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). If asked, Dr. Patel might have been able to provide a more detailed medical explanation for her opinion that the plaintiff needed to keep her legs elevated and could have specified the amount of time and the height at which plaintiff needs to elevate her legs during a given work day to facilitate the ALJ's analysis of the restriction. Dr. Patel's failure to include this type of support for the findings in her letters does not mean that such support does not exist; she might not have provided this information because she did not know that the ALJ would consider it critical to the disposition of the case. The ALJ did not know because he did not ask.

During the administrative hearing, the plaintiff testified that Dr. Patel had instructed her to keep her legs elevated to prevent further blood clots/embolisms. Tr. 42. With regard to her activities of daily living, the plaintiff testified that she spends most of the day sleeping and otherwise keeps her legs elevated. Tr. 42-3. Finally, the VE

testified that the plaintiff would be unemployable if she needed to elevate her legs to hip-height for up to one-half of the work day. Tr. 53. This Court finds the ALJ's decision to discredit Dr. Patel's opinion constitutes a violation of the Treating Physician's Rule.

### B. The ALJ erred in failing to evaluate PA Brynildsen's letter.

In addition to the letters authored by Dr. Patel, the plaintiff's medical record also contains a letter authored by Physician Assistant Michael Brynildsen ("PA Brynildsen") in support of the plaintiff's disability claim. Tr. 664. In the letter, dated March 9, 2016 (shortly before the plaintiff's administrative hearing in May 2016), PA Brynildsen opined that given her increased risk for DVT/pulmonary embolism despite anticoagulation therapy, the plaintiff should not be sitting for an extended period of time and would benefit if she can keep her legs elevated to prevent any further swelling/venous stasis. *Id.* The PA also stated, "Given her recurrent chest pain and shortness of breath secondary to her pulmonary embolisms, it is difficult to do any work that requires her to do a lot of walking, lifting or standing. *Id.* The ALJ omitted any discussion of the letter drafted by PA Brynildsen in the decision.

Although the treating physician rule does not apply to PA Brynildsen because he is not an "acceptable medical source," 20 C.F.R. § 416.913(a) (2013), the ALJ is required to evaluate "every medical opinion" in the record, 20 C.F.R. § 416.927(c) (2012), and may – although not required to – consider opinions from "other sources," including physician assistants, bearing on the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(d)(1) (2013); *see also*

*Genier v. Astrue*, 298 F.App'x 105, 108 (2d Cir. 2008) (ALJ was "free to consider" opinion of physician's assistant but was also "free to discount [the] assessment in favor of those by physicians). Here, the ALJ failed to evaluate PA Brynildsen's opinion, which was a part of the plaintiff's medical record, and supported Dr. Patel's opinion that the plaintiff would need to keep her legs elevated. SSR 06-03p provides that, in considering statements from other sources, adjudicators should consider among other things, how consistent the opinion is with other evidence, how well the source explains the statement, and any other factors that tend to support or refute the statement. SSR 06-3p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). The Commissioner concedes that the ALJ did not discuss or specify the weight that he assigned to PA Brynildsen's opinion but contends that the ALJ did not err by omitting any evaluation of the opinion from the RFC determination because the opinion was "not time-period relevant." Dkt. No. 16, 17-18. However, this Court may not accept post-hoc rationalizations for agency action, and the Commissioner is instructed to at least evaluate PA Brynildsen's opinion on remand.

### C. The ALJ improperly relied on his own lay opinion in determining the plaintiff's RFC.

In deciding a disability claim, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F.Supp.3d 581,586 (W.D.N.Y. 2018) (quotation omitted). Having rejected Dr. Patel's opinion, it

was error for the ALJ to rely on his own lay opinion in determining that the plaintiff was capable of performing a modified level of sedentary work. *See Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. 2010) (holding an ALJ is not qualified to assess a claimant's RFC "on the basis of bare medical findings," and also holding that where the medical findings in the record merely "diagnose" a claimant's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence). It is unclear to this Court how the ALJ, who is not a medical professional, came to the conclusion that the plaintiff could perform sedentary work with additional limitations and did not need to elevate her legs as her treating physician suggested, without relying on any medical advisor's assessment.

Because the ALJ in this matter erred in discrediting Dr. Patel's opinion by failing to develop the record, failed to evaluate PA Brynildsen's letter, and ultimately relied on his own lay interpretation of medical record evidence in support of the plaintiff's RFC determination, this Court finds the Commissioner's decision is unsupported by substantial evidence. Therefore, this case must be remanded for further administrative proceedings during which the record can be appropriately developed.

## CONCLUSION

For the foregoing reasons, Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is DENIED, and Plaintiff's motion for judgment on the pleadings

(Dkt. No. 13) is GRANTED to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  The Clerk of the Court is directed to close this case.

DATED:　　Buffalo, New York
　　　　　　April 12, 2019

                                                *s/ H. Kenneth Schroeder, Jr.*
                                                **H. KENNETH SCHROEDER, JR.**
                                                **United States Magistrate Judge**